UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| FRANK CHAPIN and S. GUTIERREZ-CHAPIN, also known as SYDNEY CHAPIN and SYDNEY GUTIERREZ-CHAPIN<br><br>Petitioners,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No.: 2:14-cv-00443-EJL-REB<br><br>**REPORT AND RECOMMENDATION RE:**<br><br>**PETITIONERS' PETITION TO QUASH THIRD PARTY SUMMONS**<br><br>**(Docket No. 1)**<br><br>**RESPONDENT'S MOTION TO DISMISS OR DENY PETITION TO QUASH**<br><br>**(Docket No. 9)** |

Now pending before the Court is Petitioners' Petition to Quash Third Party Summons (Docket No. 1) and Respondent's[1] Motion to Dismiss or Deny Petition to Quash (Docket No. 9). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Report and Recommendation:

**RELEVANT BACKGROUND**

Heather L. Blair is a Revenue Agent of the IRS, with a post in Spokane, Washington. *See* Blair Decl., ¶ 1 (Docket No. 11). In her capacity as a Revenue Agent, Agent Blair conducts

---

[1] Originally, Petitioners also named Internal Revenue Service ("IRS") Agent, Heather L. Blair, and the IRS as Respondents. *See* Pet. to Quash (Docket No. 1). However, a suit against a federal officer in her official capacity is barred by the doctrine of sovereign immunity. *See Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985); *see also* Resp.'s Mem. in Supp. of MTD, p. ii, n. 2 (Docket No. 10). Therefore, Agent Blair is not a proper party to this action. Additionally, the IRS is also an improper party because Congress has not authorized suit against it. *See Castleberry v. Alcohol, Tobacco and Firearms Division*, 530 F.2d 672, 673, n.3 (5th Cir. 1976) (stating that Congress has not authorized suit against Department of Treasury or any of its divisions or branches); *see also* Resp.'s Mem. in Supp. of MTD, p. ii, n.2 (Docket No. 10).

**REPORT AND RECOMMENDATION - 1**

tax audits and examinations to determine whether a person has unpaid tax liabilities. *See id*. at ¶ 2. Relevant here, Agent Blair was assigned to conduct an income tax examination of Petitioners, Frank L. Chapin and Sydney Gutierrez-Chapin (the "Chapins"), to determine whether they have unpaid tax liabilities for the calendar years ending December 31, 2009, December 31, 2010, December 31, 2011, and December 31, 2012. *See id*.

In connection with her investigation of the tax liability of the Chapins, on October 2, 2014, Agent Blair caused a summons to issue to Mountain West Bank in Coeur d'Alene, Idaho. *See id*. at ¶ 4. The summons directed Mountain West Bank to produce for examination the following materials:

1. All bank records for the calendar year(s) ending December 31, 2009, December 31, 2010, December 31, 2011, and December 31, 2012 relating to all accounts in the name of and/or under the signatory control of ***Chapin, Frank and/or S. Gutierrez-Chapin also known as Sydney Gutierrez-Chapin and Sydney Chapin***, including but not limited to:

    a. Account signature cards
    b. Bank statements
    c. Canceled checks (both sides) and debit memos
    d. Savings account ledger cards
    e. Deposit slips, deposit items, wire information, and credit memos
    f. Correspondence
    g. Escrow accounts

2. All bank records for the calendar year(s) ending December 31, 2009, December 31, 2010, December 31, 2011, and December 31, 2012 relating to all loans made in the name of and/or under the signatory control of ***Chapin, Frank and/or S. Gutierrez-Chapin also known as Sydney Gutierrez-Chapin and Sydney Chapin***, including but not limited to:

    a. Loan applications
    b. Financial statements
    c. Loan and credit files
    d. Correspondence

*See id*. (citing Ex. A to Blair Decl. (Docket No. 11, Att. 1) (emphasis in original)). The summons further indicated that, as of October 2, 2014, Agent Blair was requesting "only items

**REPORT AND RECOMMENDATION - 2**

#1a, 1b, 1e above," but that "[Mountain West Bank may be asked to provide the other materials at a later date." *See* Ex. A to Blair Decl. (Docket No. 11, Att. 1). Finally, the summons stated that Mountain West Bank could comply with the summons by mailing the requested information to Agent Blair's office in Spokane, Washington by October 29, 2014. *See id*.

On October 22, 2014, the Chapins petitioned this Court to quash the at-issue summons. *See* Pet. to Quash (Docket No. 1). The Chapins' Petition raises three arguments: (1) they are "active in the accounting business" and "entitled to any privileges of Evidence Rule 515 granting an accountant privilege"; (2) the requested information contains the social security numbers of the Chapins' clients who are not under audit and such information "cannot be disclosed to a federal agency"; and (3) the summons speaks to "records sought completely or partly to determine an economic reality examination technique in an attempt to determine the alleged existence of unreported income and are prohibited by 26 U.S.C. § 7602(e)." *See id*. at p. 3.

The United States disagrees, arguing that the Chapins' Petition should dismissed/denied because it does not offer a sufficient justification for quashing the summons. *See* MTD, p. 2 (Docket No. 9). Specifically, in support of their own Motion to Dismiss (which simultaneously stands as an opposition to the Chapins' Petition), the United States generally submits that "[i]t is well established that the IRS is entitled to seek certain kinds of information from both the taxpayer and a third party, even when it contains duplicative or sensitive information," while going on to reject each of the Chapins' above-mentioned arguments.

## DISCUSSION

"Congress has 'authorized and required' the IRS 'to make the inquiries, determinations, and assessments of all taxes' the Internal Revenue Code imposes." *U.S. v. Clarke*, 134 S.Ct. 2361, 2365 (2014) (quoting 26 U.S.C. § 6201(a)). "And in support of that authority, Congress

**REPORT AND RECOMMENDATION - 3**

has granted the [IRS] broad latitude to issue summonses '[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . ., or collecting any such liability.'" *Clarke*, 134 S.Ct. at 2365 (quoting 26 U.S.C. § 7602(a)). "Such a summons directs a taxpayer (or associated person)[2] to appear before an IRS official and to provide sworn testimony or produce 'books, papers, records, or other data . . . relevant or material to [a tax] inquiry.'" *Clarke*, 134 S.Ct. at 2365 (quoting 26 U.S.C. § 7602(a)(1)).

"The purpose of a summons is 'not to accuse,' much less to adjudicate, but only 'to inquire.'" *Clarke*, 134 S.Ct. at 2367 (quoting *United States v. Bisceglia*, 420 U.S. 141, 146 (1975)). As an "investigatory tool," a summons represents "a crucial backstop in a tax system based on self-reporting." *Id*. (restricting summons authority would enable "dishonest persons [to] escap[e] taxation[,] thus shifting heavier burdens to honest taxpayers"). As a result, it is well-established that "courts may ask only whether the IRS issued a summons in good faith, and must eschew any broader role of 'oversee[ing] the [IRS's] determinations to investigate.'" *Clarke*, 134 S.Ct. At 2367 (quoting *United States v. Powell*, 379 U.S. 48, 56 (1964)); *see also Donaldson v. United States*, 400 U.S. 517, 533 (1971) (rejecting rules that would "thwart and defeat the [IRS's] appropriate investigatory powers.").

"Enforcement of a summons is generally a summary proceeding to which a taxpayer has few defenses." *United States v. Derr*, 968 F.2d 943, 945 (9th Cir. 1992). The IRS must make a *prima facie* showing that: (1) there is a legitimate purpose for the investigation; (2) the material

---

[2] "The IRS has authority to summon not only 'the person liable for tax,' but also 'any officer or employee of such person,' any person having custody of relevant 'books of account,' and 'any other person the [IRS] may deem proper.'" *Clarke*, 134 S.Ct. at 2365, n.1 (quoting 26 U.S.C. § 7602(a)(2)).

**REPORT AND RECOMMENDATION - 4**

sought may be relevant to that purpose; (3) the material sought is not already within the IRS's possession; and (4) that the administrative steps required by the Internal Revenue Code have been taken. *See Powell*, 379 U.S. at 57-58. "To make that showing, the IRS usually files an affidavit from the responsible investigating agent." *Clarke*, 134 S.Ct. at 2365 (citing *United States v. Stuart*, 489 U.S. 353, 359 (1989)); *see also United States v. Dynavac, Inc.*, 6 F.3d 1407, 1414 (9th Cir. 1993) ("The government's burden is a slight one, and may be satisfied by a declaration from the investigating agent that the *Powell* requirements have been met.").

Once a *prima facie* case is made, a "heavy" burden is placed on the taxpayer to show an "abuse of process" or "the lack of institutional good faith." *Dynavac*, 6 F.3d at 1414; *see also Fortney v. United States*, 59 F.3d 117, 120 (9th Cir. 1995). "The taxpayer must allege specific facts and evidence to support his allegations." *Liberty Fin. Servs. v. United States*, 778 F.2d 1390, 1392 (9th Cir. 1985). A party opposing the summons must be able to come forward with at least "a minimal amount of evidence just to entitle him or her to an evidentiary hearing." *United States v. Stuckey*, 646 F.2d 1369, 1372 (9th Cir. 1981); *see also Clarke*, 134 S.Ct. at 2367 ("[T]he taxpayer is entitled to examine an IRS agent when he can point to specific facts or circumstances plausibly raising an inference of bad faith. Naked allegations of improper purpose are not enough . . . . That standard will ensure inquiry where the facts and circumstances make inquiry appropriate, without turning every summons dispute into a fishing expedition of official wrongdoing."). If no substantial challenge to the validity of the summons is made in a sworn affidavit or declaration alleging specific facts, the matter should be decided on the pleadings before the district court with no further proceedings, the summons should be enforced, and the IRS should be allowed to obtain the summoned testimony and records. *See Liberty Fin. Servs.*, 778 F.2d at 1392-93; *Stuckey*, 646 F.2d at 1372-76.

**REPORT AND RECOMMENDATION - 5**

For the reasons stated below, the Court finds that the United States has made a *prima facie* showing of the *Powell* factors and that the Chapins have not met their "heavy" burden of establishing that the summons was issued for an improper purpose. It is therefore recommended that (1) Petitioners' Petition to Quash Third Party Summons (Docket No. 1) be DENIED, and (2) Respondent's Motion to Dismiss or Deny Petition to Quash (Docket No. 9) be GRANTED.

**A.      The United States Has Made a *Prima Facie* Showing Supporting Enforcement of the Summons**

   1.      <u>Legitimate Purpose</u>

The IRS is authorized to issue summonses "in good faith pursuit of the congressionally authorized purposes of § 7602." *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 318 (1978). As stated above, these purposes include: "ascertaining the correctness of any return, making a return where none has been made, [and] determining the liability of any person for any internal revenue tax." 26 U.S.C. § 7602(a). Here, Agent Blair's declaration states that:

> [t]he summons at issue in this case is for information that might be relevant to the taxpayers' income tax liabilities for the tax years 2009, 2010, 2011, and 2012. The purpose of the summons is to facilitate review of the income reported by the taxpayers on their United States Individual Income Tax Returns (Forms 1040) for the years under examination.

Blair Decl., ¶ 6 (Docket No. 11). From this, it is clear that the United States has made a *prima facie* showing that it had a legitimate purpose in serving the summons on Mountain West Bank.

   2.      <u>Relevant Information</u>

The IRS is authorized to inquire as to all items that may be of "potential relevance to its investigation." *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984). Materials requested by summons are potentially relevant to an IRS investigation when they "might throw light upon the correctness of the return." *David H. Tedder & Assocs. v. United States*, 77 F.3d 1166, 1168 (9th Cir. 1996). In other words, materials summoned are relevant if the IRS has "a

**REPORT AND RECOMMENDATION - 6**

realistic expectation rather than an idle hope that something may be discovered." *Id*. at 1169.  In this respect, Agent Blair's declaration states:

> The bank records are sought because they are very likely to show bank deposits (which may represent taxable income), as well as withdrawals (which may represent deductible expenses).
>
> The taxpayers had included gross receipts on the originally filed Form 1040 tax returns and confirmed during an interview that certain income had been deposited in their bank accounts.  Thus, I had reason to believe that their bank account records might contain information about their income.  I issued four Information Document Requests to the taxpayers requesting bank statements as well as deposit slips and deposited items for the years at issue.  The taxpayers provided me with incomplete bank records, including missing bank statements, and did not provide me with deposit slips or deposited item detail for those years.  The incomplete records they provided did not reflect some of the deposits about which I already knew.  I also requested a general ledger in order to test gross receipts from the books to the bank records, but the taxpayers declined to provide a general ledger.  After receiving the incomplete records, I requested the missing bank records, but the taxpayers declined to provide them to me.  Indeed, after one of my requests for documents, Frank Chapin sent me a letter where he said: "I am not going to dig out information for 2011 or 2012 information until we find out whether we have problems on 2009 and 2010."
>
> The incomplete bank records, in combination with the originally filed 1040 returns and the interview referenced [above], reasonably indicate that there is a likelihood of unreported income for the tax years at issue, and that an in-depth income examination method is required in order to complete the examination. . . . .
>
> The information sought by the summons may be relevant to whether the taxpayers have additional taxable income.  I have a reasonable expectation that the records for the periods listed in the summons might help determine the extent of the income required to be reported on the returns I am examining.

Blair Decl., ¶¶ 7-9, 11 (Docket No. 11).  The record clearly supports a *prima facie* showing by the United States that the bank records sought from Mountain West Bank *may be* relevant to determining the Chapins' tax liability for tax years 2009-2012.  *See, e.g.*, *Arthur Young*, 465 U.S. at 814 ("The language 'may be' reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation, without reference to its

**REPORT AND RECOMMENDATION - 7**

admissibility. The purpose of Congress is obvious: the Service can hardly be expected to know whether such data will in fact be relevant until they are procured and scrutinized.").

3. Lack of Possession

Inherently obvious within Agent Blair's testimony concerning her interaction with the Chapins *vis à vis* her four Information Document Requests (*see supra*), is the fact that the information sought in the summons is not already in the IRS's possession. That the Chapins may have produced *some* relevant information is not enough when, according to Agent Blair, the information produced was incomplete for one reason or another. Agent Blair's declaration goes on to state in no uncertain terms that "[t]he information sought by the summons is not in the IRS's possession." Blair Decl., ¶ 12 (Docket No. 11). The United States has therefore made a *prima facie* showing that it is not in possession of the requested materials.

4. Administrative Steps

A third-party summons issued by the IRS may be served by certified or registered mail to the last known address of the summoned party. *See* 26 U.S.C. § 7603(b). The IRS is also required to provide notice of such a third-party summons to the taxpayer. *See* 26 U.S.C. § 7609(a). In this respect, Agent Blair's declaration states:

> In accordance with 26 U.S.C. § 7603(b), I served an attested copy of the summons directed to Mountain West Bank by certified mail. Notice of the summons was given to Frank L. Chapin and Sydney Gutierrez-Chapin within three days of the day on which such service was made, in accordance with 26 U.S.C. § 7609, by mailing a copy of the summons by certified mail to the last known addresses of Frank and Sydney Chapin. . . . .
>
> The administrative steps required to issue a summons have been met.

Blair Decl., ¶¶ 5, 13 (Docket No. 11). The Chapins do not seriously challenge the accuracy of these statements. Therefore, the United States has made a *prima facie* showing that the administrative steps required by the Internal Revenue Code have been taken.

**REPORT AND RECOMMENDATION - 8**

**B.      The Chapins Have Not Met the Heavy Burden Required to Quash the Summons**

Because the United States has met its burden under *Powell*, the burden shifts to the Chapins to show an abuse of process or bad faith. The arguments raised by the Chapins in favor of quashing the summons outright do not meet this burden.[3]

      1.      Accountant-Client Privilege

As the United States' points out, the summons requests information from Mountain West Bank – not from any accountant – about the Chapins' bank accounts. The Chapins point to no privilege that exists between them and their bank. More practically speaking, however, no accountant-client privilege is recognized by either the common law or the federal courts in tax investigation proceedings. *See Couch v. United States*, 409 U.S. 322, 335 (1973); *United States v. Devon Bank*, 529 F. Supp. 40, 43 (D.C. Ill. 1981). Consequently, the Chapins' assertion of the accountant-client privilege here does not constitute a legally valid basis for quashing the IRS summons directed at Mountain West Bank.

      2.      Social Security Numbers

According to the Chapins, "the records sought contain large numbers of [their] clients who are not under audit . . . ." Pet. to Quash, p. 3 (Docket No. 1). Through the parties' briefing and oral argument, it became clear that only certain of the information requested in the summons (at least one payroll management account) contains third-party social security numbers (not *all*

---

[3] The Chapins' objections have evolved over time to include not only the original three objections listed in their Petition to Quash, but also other, substantive objections to the statements made by Agent Blair in her declaration. This Report and Recommendation attempts to address the Chapins' objections in their entirety.

**REPORT AND RECOMMENDATION - 9**

of the requested information, as the Chapins' original Petition to Quash would suggest). Mr. Chapin's declaration confirms as much:

> Among the accounts that I can sign on at Mountain West Bank is a payroll management account utilized by my clients. None of my money has ever been deposited into the payroll account or paid out to me. All the funds paid in are paid out to tax authorities or refunded to the client. Fees paid to me for management are billed to my clients separately and paid separately. This account has a large number of social security and employer identification numbers, phone, fax, email, and regular addresses.

Chapin Decl., ¶ 2 (Docket No. 17); *see also* Resp. to MTD, p. 2 (Docket No. 16) ("One bank account sought is a payroll systems account that has never contained any income or expense of the [Chapins]. It only has client information and deposits."). The Chapins argue that disclosing such information violates federal law. However, the legal authority he cites in support of this proposition does not apply. *See* Pet. to Quash, p. 3 (Docket No. 1) (citing 5 U.S.C. § 552(a), 26 U.S.C. § 6103(a)(2), 31 C.F.R. § 1.32); *see also* Resp. to MTD, p. 5 (Docket No. 16) (citing FRCP 5.2(a)(1)).

For instance, 5 U.S.C. § 552, the Freedom of Information Act, sets forth the records and information that an agency of the federal government must make available to private citizens upon request; it does not put limits on the ability of the IRS to recover information from a bank or other private citizen. Similarly, 26 U.S.C. § 6103(a)(2) prohibits disclosure of returns and return information by any "officer or employee of any State, any local law enforcement agency receiving information under subsection (i)(7)(A), any local child support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who has or had access to returns or return information under this section or section 6104(c)." 26 U.S.C. § 6103(a)(2). Except the IRS is attempting to obtain information from Mountain West Bank, a private entity

**REPORT AND RECOMMENDATION - 10**

that is not subject to 26 U.S.C. § 6103(a)(2)'s reach. Likewise, 31 C.F.R. § 1.32 merely allows individuals to refuse to disclose social security numbers when requested by a federal agency unless the disclosure "is required by Federal statute." 31 C.F.R. § 1.32(a) & (b). This does not apply to the bank and, even if it did, an argument exists that compliance with the summons is required by federal law. *See supra*. Finally, FRCP 5.2(a)(1) requires that social security numbers be redacted "in an electronic or paper filing with the court." Fed. R. Civ. P. 5.2(a). Here, no information is being filed. Simply put, the Chapins provide no authority precluding the enforcement of a summons that requests records containing social security numbers.

Still, the Court is cognizant of the general concerns raised by the Chapins as to any payroll management account information requested by the summons. *See supra*. With these concerns in mind, the summons should be limited only to deposits made by the Chapins (or any entity they control) and withdrawals payable to same (check or electronic) and cash; deposits and withdrawals made by, or on behalf of, other entities should be outside the scope of the summons. To the extent not already contemplated by the summons in its current state, it should be refined accordingly. In the event the United States finds after the summons is enforced and documents are produced that this excepted information is needed, it may initiate a new proceeding to pursue the same. (And, of course, the United States can also choose to object to this Report and Recommendation (*see infra*)).

      3.   <u>Economic Reality Examination Techniques</u>

There are two methods of proof in tax cases: (1) direct or specific item methods; and (2) indirect methods (financial status or economic reality examination techniques). *See United States v. Marabelles*, 724 F.2d 1374, 1377, n.1 (9th Cir. 1984) ("'The specific item method is . . . direct in its operation. The usual strategy . . . is for the Government to produce evidence fo the

**REPORT AND RECOMMENDATION - 11**

receipt of specific items of reportable income by the defendant that do not appear on his income tax return or appear in diminished amount.'") (quoting *United States v. Horton*, 526 F.2d 884, 886 (5th Cir. 1976)); *see also United States v. Hart*, 70 F.3d 854, 860, n.8 (6th Cir. 1995) ("In the 'indirect' method, the defendant's finances are reconstructed via circumstantial evidence including (1) net worth analysis; (2) bank deposits; and (3) cash expenditures in excess of reported income.").

    The IRS may not use indirect methods (also known as financial status or economic reality examination techniques) to determine the existence of unreported income unless it has a reasonable indication of the existence of that unreported income. *See* 26 U.S.C. § 7602(e) ("The Secretary shall not use financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the Secretary has a reasonable indication that there is a likelihood of such unreported income."); *see also* H.R. Conf. Rep. No. 105-599 at 270 (1998) ("The provision prohibits the IRS from using financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the IRS has a reasonable indiction that there is a likelihood of unreported income."). "Financial status or economic reality examination techniques focus on the lifestyle of the taxpayer and other elements unrelated to the specific preparation of the tax return, such as net worth and bank deposits." *Trevino v. United States*, 2005 WL 4829608, *3 (N.D. Cal. 2005) (citing 1998 *Tax Legislation: Law, Explanation and Analysis*, at 270 (CCH 1998); General Accounting Office Report GAO/T-GGD-97-186, *Tax Administration: Taxpayer Rights and Burdens During Audits of Their Tax Returns*, at 9 (Sept. 26, 1997)).

    Here, the parties dispute the method of proof used by the IRS. *Compare* Reply in Supp. of MTD, p. 9 (Docket No. 19), *with* Resp. to MTD, pp. 7-8 (Docket No. 16). Regardless, if the

**REPORT AND RECOMMENDATION - 12**

method is indirect, the allegedly incomplete bank records provided to the IRS by the Chapins reasonably indicate that there is a likelihood of unreported income for the tax years at issue because, according to Agent Blair, the incomplete records provided to her do not reflect the income that the Chapins told the IRS that they had received.  *See* Blair Decl., ¶ 8 (Docket No. 11).  *See, e.g.*, *Trevino*, 2005 WL 4829608 at *4.

      4.      Duplicative Information

Despite Agent Blair's testimony to the contrary, the Chapins argue that the IRS is already in possession of some of the information requested within the summons.  *See* Chapin Decl., ¶ 7 (Docket No. 3) ("I have furnished in excess of 960 copies of information to the audit agent, Heather Blair.  This information is sufficient to conduct the audit."); Resp. to MTD, pp. 3 & 8 (Docket No. 16) ("Of great importance is that Chapin's declaration proved that the agent has complete copies of bank statements, checks and deposit slips already in her possession to complete the original audit. . . . . [Agent Blair] also states that she admits that she has at least some of the deposit slips and bank records of the Petitioners.  She does not state what records she has.  It is obvious that she has many records in her possession.  She now wants duplicates."); Chapin Decl., ¶ 2 (Docket No. 17) ("I personally met with Ms. Blair twice in face to face meetings, each lasting about 1-1 ½ hours.  Ms. Blair was furnished with all of the bank statements she requested for 2009 and 2010.").  This position, even if buttressed by understandable frustration on the Chapins' part, does not support quashing the summons.

Even if the IRS has some of the requested documents, or at least some version of those documents, it is nevertheless entitled to the records and other information from third parties like Mountain West Bank to determine if they are consistent.  *See Liberty Fin. Servs.*, 778 F.2d at 1392-93 ("The district court held that the IRS could not ascertain whether all relevant records

**REPORT AND RECOMMENDATION - 13**

had been released until it had examined the requested documents.  It also held that the IRS is entitled to compare for accuracy, the records produced by [the taxpayer] with those held by [the taxpayer's bank].  We agree."); *United States v. Luther*, 481 F.2d 429, 432 (9th Cir. 1973) (fact that IRS already had access to some records filed by corporation did not "destroy the government's right to inspect the [corporation's] original and primary records."); *Sugarloaf Funding, LLC v. U.S. Dept. of the Treas.*, 584 F.3d 340, 350 (1st Cir. 2009) (holding that IRS is entitled to obtain records from third parties to ascertain the accuracy of records already provided by the taxpayer); *Mollison v. United States*, 481 F.3d 119, 124 (2nd Cir. 2007) (same).

Here, there is no indication that the IRS already has the *all* of the requested bank records (from any source) or, for that matter, from Mountain West Bank, which is the target of the summons..  Agent Blair unequivocally states that the IRS does not have all such records.  *See* Blair Decl., ¶ 12 (Docket No. 11).  Therefore, any argument that the Chapins already provided Agent Blair with some of the requested information is unavailing.[4]

    5.    <u>Substantive Objections</u>

The Chapins critique Agent Blair's declaration as containing only conclusions, not facts. *See* Resp. to MTD, pp. 6-7 (Docket No. 16) ("Heather Blair's Declaration does not state identifying facts.  It merely states that her testimony is based 'on my own experience.'  She states she had 'reason to believe,' but doesn't state the reason.  She concludes that she has been given incomplete records, but does not define why the 960 copies Chapin states were given to

---

[4] Further, the Chapins' contention that Agent Blair had not reviewed the materials provided to her is of no consequence toward quashing the summons.  *See* Chapin Decl., ¶ 2 (Docket No. 17) ("Ms. Blair was furnished with all of the bank statements she requested for 2009 and 2010.  During my meetings with her, Ms. Blair admitted that she had not looked at any of the information that I sent her.").  Even if true, this does not prove that the IRS already has all of the information requested in the summons.

**REPORT AND RECOMMENDATION - 14**

her are incomplete. She only concludes a 'likelihood.' The entire Declaration contains only conclusions with no detail."). In furtherance of this point, the Chapins attack the *bona fides* of the IRS's pursuit of the requested information, asserting that "[t]here has been no communication of any kind to allow me or my wife to explain any deposit, check or bank statements. . . . . Ms. Blair has never given me a list of deposits that she wants identified. I can identify each deposit." Chapin Decl., ¶ 2 (Docket No. 17).

As stated above, the United States has made a *prima facie* showing that the bank records sought from Mountain West Bank *may be* relevant to determining the Chapins' tax liability for tax years 2009-2012. *See supra*. It can be expected that the Chapins believe otherwise, and could show as much if just given a chance to explain. However, such a position on the part of the Chapins does not translate into an abuse of process or bad faith by the IRS in issuing the summons. According to Agent Blair, the Chapins' bank account records were inconsistent with the amounts listed on their Form 1040 tax returns, eventually leading to the issuance of the summons. *See* Blair Decl., ¶ 8 (Docket No. 11). The Chapins provide no legal authority stating that, before so issuing the summons, Agent Blair was required to fully involve the Chapins in the investigation into their tax liability. She is not required to do so. At some future date, the Chapins' position may be vindicated and they may prevail; however, whatever substantive reason might possibly exist for such an ultimate finding down the road does not warrant the quashing of the summons at this initial stage.

With all this in mind, the Chapins offer no actual evidence that the IRS acted improperly, nor does the circumstantial evidence in the record support such an inference. The Chapins cannot meet their "heavy" burden simply by arguing that the summons is a fishing expedition

**REPORT AND RECOMMENDATION - 15**

and that the information is being sought to harass them. *See, e.g.*, Chapin Decl., ¶ 2 (Docket No. 17) ("I know of my own knowledge that by asserting my rights Ms. Blair is using her power in an attempt to assert her superior position. She is getting paid to pressure me. I am not getting paid and must spend time and money to preserve client information. I respectfully state that this action is brought in bad faith and based on an abuse of power."). Without specific facts or evidence to support their allegations of bad faith, the Chapins cannot meet their burden to quash the summons.

C.      **The Chapins Are Not Entitled to an Evidentiary Hearing**

The Chapins may examine Agent Blair if they can point to specific facts or circumstances that plausibly raise an inference of bad faith. *See supra* (citing *Clarke*, 134 S.Ct. at 2367). However, as discussed above, the Chapins have not highlighted the requisite facts and circumstances that would suggest bad faith on Agent Blair's part. *See supra*. Accordingly, the Chapins are not entitled to an evidentiary hearing in this case.

## RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Petitioners' Petition to Quash Third Party Summons (Docket No. 1) be DENIED and Respondent's Motion to Dismiss or Deny Petition to Quash (Docket No. 9) be GRANTED. Additionally, the undersigned recommends that, to the extent necessary, the summons should be limited only to deposits made by the Chapins (or any entity they control) and withdrawals payable to same (check or electronic) and cash; deposits and withdrawals made by, or on behalf of, other entities should be outside the scope of the summons.

Pursuant to Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty

**REPORT AND RECOMMENDATION - 16**

pages . . . within fourteen (14) days. . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a response, not to exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."[5]

DATED: **August 5, 2015**

Honorable Ronald E. Bush
U. S. Magistrate Judge

---

[5] An ancillary issue presented itself during oral argument: whether the summons's directive to have a bank in Idaho produce materials to an IRS office in Washington impacts this Court's jurisdiction. Setting aside any argument that it is Mountain West who has standing to make such a challenge, the United States notes that "the time and place of an examination under 26 U.S.C. § 7602 'are to be fixed by an officer or employee of the [IRS], and officers and employees are to endeavor to schedule a time and place that are reasonable under the circumstances' and '[n]othing in this section shall be interpreted as precluding the [IRS] from initiating the transfer of an examination if the transfer would promote the effective and efficient conduct of the examination.'" Supp. Filing Re: Jxn., pp. 2-3 (Docket No. 31) (quoting 26 C.F.R. §§ 301.7605-1(a) & (g)). Here, there are three IRS offices in this District: Boise, Pocatello, and Idaho Falls. There *used to be* an IRS office in Coeur d'Alene, but it was closed in 2013 due to sequestration budge cuts. The IRS office in Spokane, Washington is unquestionably the closest office to Coeur d'Alene, Idaho and Mountain West Bank. Setting the examination in Spokane, Washington is "reasonable under the circumstances."

**REPORT AND RECOMMENDATION - 17**